No. 16-6027

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA, Plaintiff-Appellee,

vs.

CARLOS DAVID CARO, Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia
Hon. James P. Jones, District Judge, Presiding
Dist. Ct. No. 2:03CR10115

## INFORMAL OPENING BRIEF OF APPELLANT CARLOS DAVID CARO

JON M. SANDS
Federal Public Defender
District of Arizona
TIMOTHY M. GABRIELSEN
Nevada Bar No. 8076
Assistant Federal Public Defender
407 West Congress Street, Suite 501
Tucson, Arizona 85701
tim_gabrielsen@fd.org
Tel. (520) 879-7614
Facsimile (520) 622-6844

FAY F. SPENCE
Virginia Bar No. 27906
First Assistant Federal Public Defender
210 First Street, SW, Suite 400
Roanoke, Virginia 24011
fay_spence@fd.org
Tel. (540) 777-0880
Facsimile (540) 777-0890

BRIAN J. BECK
Virginia Bar No. 78049
Assistant Federal Public Defender
201 Abingdon Place
Abingdon, Virginia 24211
brian_beck@fd.org
Tel. (276) 619-6080
Facsimile (276) 619-6090

*Counsel for Defendant-Appellant Carlos David Caro*

## TABLE OF CONTENTS

Jurisdictional Statement ...................................................................................1

Statement of the Issue ....................................................................................1

Statement of the Case......................................................................................2

A.      Introduction.........................................................................................2

B.      The conviction in the Benavidez case. ................................................3

      1.      The plea agreement. ..............................................................3

      2.      The plea hearing and non-capital sentencing. ......................3

C.      Caro's § 2255 proceedings in the Benavidez case. ............................4

Summary of the Argument ..............................................................................12

Carlos David Caro was denied his right to the effective assistance of counsel under the Sixth Amendment where his trial counsel counseled him to plead guilty to the offense of conspiracy to commit murder within a federal prison without apprising him that the Government would later admit that conviction and the resulting lengthy prison sentence in aggravation at a capital sentencing hearing.

      ...............................................................................................................13

A.      Standard of review..............................................................................15

B.      The Court should reject the untimeliness argument. ..........................16

      1.      Caro's motion was timely under §2255(f)(4). ....................17

      2.      Equitable tolling saves the § 2255 Motion from untimeliness. .........21

C.      The district court erred in dismissing the IAC claim on its merits. .............28

      1.      The law of *Strickland*, *Hill*, and collateral consequences...................28

2.      Deficient performance and prejudice. ................................................31

Conclusion   ..............................................................................................35

Request for Oral Argument...................................................................35

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Barefoot v. Estelle*, 463 U.S. 880 (1983) .................................................................16

*Beck v. Alabama*, 447 U.S. 625 (1980)...................................................................31

*Bolarinwa v. Williams*, 593 F.3d 226 (2d Cir. 2010) .............................................23

*Dando v. Yukins*, 461 F.3d 791 (6th Cir. 2006)......................................................29

*Dandridge v. Williams*, 397 U.S. 471 (1970) .........................................................14

*Fowler v. Joyner*, 753 F.3d 446 (4th Cir.2014) ......................................................27

*Gray v. Branker*, 529 F.3d 220 (4th Cir. 2008) ................................................24, 30

*Hill v. Lockhart*, 474 U.S. 52 (1985) ..........................................5, 14, 29, 30, 33

*Holland v. Florida*, 560 U.S. 631 (2010)...............................................20, 22, 23

*Johnson v. United States*, 544 U.S. 295 (2005) ......................................................20

*Lambrix v. Singletary*, 520 U.S. 518 (1997)..........................................................13

*Missouri v. Frye*, ___ U.S. ___, 132 S. Ct. 1399 (2012).........................................29

*Munchinski v. Wilson*, 694 F.3d 308 (3d Cir. 2012)...............................................21

*Padilla v. Kentucky*, 559 U.S. 356 (2010) ...................................................11, 23, 30

*Ramos-Martinez v. United States*, 638 F.3d 315 (1st Cir. 2011)............................13

*Riva v. Ficco*, 615 F.3d 35 (1st Cir. 2010)..............................................................23

*Rompilla v. Beard*, 545 U.S. 374 (2005) ................................................................24

*Skipper v. French*, 130 F.3d 603 (4th Cir. 1997) .......................................................14

*Slack v. McDaniel*, 529 U.S. 473 (2000) ...............................................................16

*Strickland v. Washington*, 466 U.S. 668 (1984) ....................................5, 14, 28, 31

*United States v. Akinsade*, 686 F.3d 248 (4th Cir. 2012) ........................................29

*United States v. Jones*, 600 Fed. Appx. 74 (4th Cir. 2014) .....................................15

*United States v. Juarez*, 672 F.3d 381 (5th Cir. 2012) ............................................29

*United States v. Lemaster*, 403 F.3d 216 (4th Cir. 2005) ........................................15

*United States v. Mooney*, 497 F.3d 397 (4th Cir. 2007) ..........................................29

*United States v. Nicholson*, 475 F.3d 241 (4th Cir. 2007) .......................................15

*United States v. Poindexter*, 492 F.3d 263 (4th Cir. 2007) ................................15, 33

*United States v. Smith*, 395 F.3d 516 (4th Cir. 2005) ..............................................14

*United States v. Sosa*, 364 F.3d 507 (4th Cir. 2004) ..........................................22, 23

*Woodson v. North Carolina*, 428 U.S. 280 (1976) ..................................................31

## DOCKETED CASES

*United States v. Caro*, Fourth Cir. No. 07-5 ...........................................................26

*United States v. Caro*, Fourth Cir. No. 16-1 ..............................................2, 36, 36

*United States v. Caro*, W.D.Va. No. 1:06CR-00001 ...................................2, 33, 34

*United States v. Caro*, W.D.Va. No. 2:03CR10115 ...........................1, 2, 5, 27, 33

## FEDERAL STATUTES

28 U.S.C. § 1291 ....................................................................................1

28 U.S.C. § 2253 ...............................................................................1, 16

28 U.S.C. § 2254 .................................................................................22

28 U.S.C. § 2255 .............................................................................*passim*

## FEDERAL RULES

Fed. R. App. P. 32(a)(7)(B) ...................................................................37

Fed. R. Civ. P. 12(b)(6)..........................................................................7

## MISCELLANEOUS

*ABA Standards for Criminal Justice: Pleas of Guilty*, No. 14-3.2(f) ......................30

*ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases*, No. 10.7.B1 (rev. 2003)......................................... 24, 25, 28

## JURISDICTIONAL STATEMENT

On January 11, 2013, Appellant Carlos David Caro ("Caro") filed a Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion"). JA 45. On February 2, 2013, the Government filed a Motion to Dismiss, JA 80, which was heard on November 25, 2013. JA 181. The district court denied the non-capital § 2255 Motion in an Opinion of May 4, 2015. JA 254. The court failed to address in its Opinion whether a Certificate of Appealability ("COA") should issue, but issued a Final Order denying the COA. JA 275-76; *United States v. Caro*, W.D.Va. No. 2:03CR10115, Doc. 203. On June 1, 2015, Caro filed a Motion to Alter or Amend Judgment Pursuant to Federal Rule of Civil Procedure 59(e). JA 268. The motion sought, *inter alia*, the issuance of a COA. JA 275-76. The district court denied the Rule 59(e) motion on November 6, 2015. JA 299. The district court's denial of the § 2255 Motion and Rule 59(e) Motion resulted in a judgment that disposed of all of the parties' claims. Caro filed a timely notice of appeal on January 4, 2016. JA 302. This Court has jurisdiction over Caro's appeal pursuant to 28 U.S.C. §§ 1291 and 2253.

## STATEMENT OF THE ISSUE

Whether Carlos David Caro was denied his right to the effective assistance of counsel under the Sixth Amendment where his trial counsel counseled him to plead guilty to the offense of conspiracy to commit murder within a federal prison without apprising him of the serious collateral consequence that the Government would later admit that conviction and sentence in aggravation at a capital sentencing hearing.

1

## STATEMENT OF THE CASE

**A.    Introduction.**

On August 29, 2003, inmate Ricardo Benavidez received multiple non-fatal stab wounds at USP-Lee.  On December 11, 2003, the Government filed a superseding indictment that charged seven inmates, including Carlos Caro, with conspiracy to murder and possession of a weapon.  *See United States v. Caro*, W.D.Va. No. 2:03CR10115.  JA 1-4 (Counts 1 & 3).  Caro and inmate Juan Moreno-Marquez were also charged with assault with the intent to commit murder. JA 3 (Count 2).  Caro would later plead guilty, on August 3, 2004, to conspiracy to commit murder.  JA 14.

In the interim, on December 17, 2003, inmate Roberto Sandoval, who shared a cell with Caro at USP-Lee, was found dead in their cell.  Caro was indicted for that murder and a jury trial commenced on January 27, 2007.  *United States v. Caro*, W.D.Va. No. 1:06CR-00001.  The jury convicted Caro and later returned a verdict of death on February 13, 2007.  The conviction in the Benavidez assault case (hereinafter, the "Benavidez case") was employed as non-statutory aggravation at Caro's capital sentencing hearing in the Sandoval homicide (hereinafter, the "Sandoval case") to prove Caro's future dangerousness if the jury were to not sentence Caro to death.  That matter is presently before the Court in the appeal of the denial of § 2255 relief in *United States v. Caro*, Fourth Cir. No. 16-1.

2

**B.      The conviction in the Benavidez case.**

**1.      The plea agreement.**

Caro and the Government negotiated a plea that was reduced to a formal agreement executed by Caro, his counsel Louis Dene, and the Government on June 29, 2004. JA 6-13. Caro agreed to plead guilty to conspiracy to murder, Count 1, in exchange for the dismissal of the assault and weapon counts. Caro's plea agreement included that he could not challenge the plea in collateral proceedings pursuant to 28 U.S.C. § 2255 and that any claim of ineffective assistance could be brought against trial counsel only up to the imposition of sentence. JA 9, 11.

**2.      The plea hearing and non-capital sentencing.**

At the plea hearing on August 3, 2004, the Government summarized the agreement, stating Caro "has waived his right to collaterally attack his judgment and the sentence in this case" and that dissatisfaction with his counsel's performance must be made known to the court "no later than the time of his sentencing" or he would waive "any claim of ineffective assistance of counsel." JA 20. The court asked whether Caro understood that "under the plea agreement you waive or give up your right to collaterally attack your sentence, meaning that you could not file a motion or petition including a petition under section 2255 to attempt to have your sentence or conviction set aside?" JA 21-22. Caro indicated that he understood. JA 22.

3

The Government stated the factual basis for the plea:  On August 29, 2003, Caro and Moreno-Marquez stabbed Benavidez with homemade Plexiglass knives, Benavidez was stabbed 28 times, a prison employee witnessed the assault, the assault was captured on surveillance video, DNA testing showed the victim's blood to be present on Caro's clothing, and both Caro and Moreno-Marquez were members of the Texas Syndicate. JA 27-29.  In accepting the plea, the court stated that "the defendant is fully competent and capable of entering an informed plea; that he is aware of the nature of the charge and the consequences of his plea; and that his plea of guilty is a knowing and voluntary plea supported by an independent basis in fact as to each of the essential elements of the offense." JA 30.

On November 1, 2004, the court imposed a maximum Guidelines sentence of 327 months in prison, to run consecutively to his prior Texas federal sentence of 30 years. JA 34.  The court filed its judgment on that date. JA 39.

### C.    Caro's § 2255 proceedings in the Benavidez case.

On January 11, 2013, Caro, through counsel appointed on his capital § 2255 case, the Federal Public Defenders for the District of Arizona and the Western District of Virginia, respectively, moved, successfully, for their appointment on the Benavidez § 2255 case on the basis that Caro's § 2255 Motion in the Sandoval case raised issues related to the guilty plea and conviction in the Benavidez case. *See* Motion for Appointment of Counsel, *United States v. Caro,* W.D.Va. No.

4

2:03CR10115, Dkts. 188 (motion), 190 (order). Caro simultaneously filed the present Motion to Vacate, Set Aside or Correct Sentence. JA 45.

In that § 2255 Motion, Caro brought the following claim:

> Trial Counsel Violated Mr. Caro's Sixth Amendment Rights By Failing to Advise Mr. Caro That He Should Not Plead Guilty to Conspiracy to Murder Because the Conviction and Sentence Would Be Used Against Him in a Later Capital Proceeding; This Failure Prejudiced Mr. Caro By Making More Likely the Imposition of a Death Sentence.

JA 50. The Motion alleged a claim of ineffective assistance of counsel ("IAC") pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984), and the Court's precedent that applies to IAC claims premised on counsel's failure to warn of serious collateral consequences of a guilty plea as set forth in *Hill v. Lockhart*, 474 U.S. 52 (1985). JA 50-51. Attached in support of the motion was a declaration of Caro's trial counsel, Louis Dene, and expert *Strickland* counsel, Larry A. Hammond, Esq.

Mr. Dene averred he was aware, prior to advising Caro to accept the plea, that Caro had been charged in the murder of Sandoval and that the Government intended to seek the death penalty. JA 57 ¶¶ 3,4. He averred that he "did not advise Mr. Caro that the Conspiracy to Murder conviction would likely be used against him in a later capital case and that he should not sign the agreement." JA 57-58, ¶ 6. Mr. Dene averred he had not explained to Caro the consequences of the plea in the non-capital case for his later capital sentencing. JA 57-58 ¶ 6. Mr.

5

Dene also conceded that Caro received no "real benefit" from the plea. JA 57 ¶ 5. Mr. Dene further averred that Caro trusted him and followed his advice, and that if Dene recommended going to trial, Caro would have done so. JA 58 ¶ 8.

Mr. Hammond was retained in both Caro's capital and non-capital § 2255 cases. He executed a declaration in which he noted that he clerked for Justices Lewis Powell and Hugo Black, and served in the Office of Legal Counsel at the Department of Justice. JA 60. Since joining the law firm now known as Osborn Maledon in Phoenix in 1981, Mr. Hammond has been involved in all phases of capital litigation in several states. JA 61-62. He has also served multiple times as a standard of care expert in capital cases that have alleged IAC claims, including in state courts in Arizona, Colorado, and Connecticut, and in the United States District Court for the District of South Carolina. JA 64-65.

He addressed in his declaration the issue of future dangerousness as a non-statutory aggravating factor at capital sentencing and the obligation on the part of counsel to challenge prior convictions, whether obtained through trial or guilty plea, which might be used by the prosecution in seeking a death sentence in an unrelated capital prosecution. JA 71. Mr. Hammond opined that Caro's trial counsel in the capital case had a duty to investigate and challenge Caro's conviction in the prison stabbing of Inmate Benavidez. JA 72. He further averred that Mr. Dene fell below the standard of care in the non-capital case "in failing to

6

properly advise Mr. Caro of the consequences of his guilty plea in that matter." JA 74 ¶ 43-45.

On February 6, 2013, the Government moved to dismiss under Fed. R. Civ. P. 12(b)(6) solely on the basis that Caro's § 2255 motion was untimely because it was filed "almost six years after Caro knew, or could have discovered through the exercise of due diligence, the facts supporting this belated claim." JA 80. The Government pegged the date on which "the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence" under § 2255(f)(4) as February 13, 2007, the date on which the conviction for the assault on Benavidez was admitted in aggravation at the capital sentencing hearing in the Sandoval case. JA 81, 84. The Government disputed Caro's assertion in his § 2255 motion that the one-year statute of limitations on filing the § 2255 motion ran from present counsel's discovery, in an interview with Dene on March 12, 2013, that Dene had not explained to Caro prior to entry of the guilty plea that the plea and sentence in the Benavidez case would be used as non-statutory aggravation at sentencing in the Sandoval case. JA 83-84.

The Government further asserted that "[i]t is also beyond argument that [Caro] knew at that time that Dene neglected to tell him, when he pleaded guilty to conspiracy to murder, that the prosecution could use that conviction and sentence

7

as an aggravating circumstance and a basis for arguing for the death penalty in his capital case." JA 84-85. In summary, the Government argued:

> According to the facts alleged in his § 2255 motion, by February 13, 2007, Caro knew the salient facts underlying his claim, yet he did nothing between February 13, 2007, and January 9, 2012, when his current attorneys began representing him. Caro cannot seriously argue that five years of inactivity is due diligence. Caro's motion should have been filed by February 12, 2008. It is now barred and must be dismissed because it is nearly five years late.

JA 84-85.

The Government failed to address anywhere in its Motion to Dismiss the merits of Caro's ineffective assistance of counsel claim.

On February 20, 2013, Caro filed an Opposition to the Motion to Dismiss. JA 87. In addition to the declarations of Mr. Dene and Mr. Hammond, JA 103, 106, Caro attached the following: the declaration of defense psychiatrist Donna M. Schwartz-Watts, M.D. (January 7, 2013); the declaration of capital trial counsel Stephen J. Kalista; the declaration of Federal Public Defender Investigator Susan Richardson; and, the pretrial Neuropsychological Consultation of Carlos Caro by Dr. Malcom Spica, Ph.D. (June 2006). JA 131, 136, 152, 172. Caro again argued the timeliness of his § 2255 Motion. JA 90-92. Caro cited the declaration of Mr. Dene in which Dene averred he anticipated that the Government would seek the death penalty in the Sandoval murder, but that Dene did not advise Caro "that a conviction for attempt murder would be used against him in the capital case as an

8

aggravator in support of a death sentence, and for this reason, Mr. Caro should not plead guilty." JA 91 (Opp.); JA 103-04 ¶¶ 4-6 (Dene Decl.). FPD Investigator Richardson averred she learned from Mr. Dene at an interview on March 9, 2012, that he did not "advise Mr. Caro about the consequences that his plea would have on the anticipated capital case." JA 172.

Caro argued that the court "should not adopt the reasoning of the government – that Mr. Caro *personally* had all of the facts necessary to file his Section 2255 Motion as of February 13, 2007, and should have filed the motion within one year of that date." JA 92. Caro alleged that he met § 2255(f)(4)'s diligence requirement because a mental impairment prevented him from appreciating the fact critical to his § 2255 motion that Mr. Dene withheld the fact that the Government would later introduce his plea to the Benavidez assault at the later capital sentencing in the Sandoval homicide. *Id.* Caro relied for support of mental impairment on Dr. Spica's pretrial diagnosis of "cerebral frontal lobe dysfunction" and, from the Diagnostic and Statistical Manual of Mental Disorders (4th ed. 1994) ("DSM-IV"), Cognitive Disorder–NOS (not otherwise specified). *See* JA 92 (Opposition); JA157 (Dr. Spica's Neuropsychological Consultation).[1]

---

[1] In the capital § 2255 appeal, Fourth Cir. No. 16-01, Caro brings a claim that the district court erred in denying relief on a claim that trial counsel rendered ineffective assistance at sentencing for failure to present *any* evidence of mental illness or dysfunction. Dr. Spica's Neuropsychological Consultation of Caro was

9

For purposes of the Opposition to the Motion to Dismiss, Caro also retained a forensic psychiatrist, Dr. Schwartz-Watts, who diagnosed Caro under the DSM-IV-TR as suffering from Cognitive Disorder – NOS. *See* JA 93-94 (Opposition); JA 138 (Dr. Schwartz-Watts' report). Caro posited in the alternative that the one-year statute of limitations should be tolled due to his mental impairment and the deficient performance of his trial counsel in the Sandoval capital murder prosecution for failing to challenge the Benavidez conviction when it was admitted at capital sentencing. JA 94-98.

The Government filed a Reply in which it made two arguments in opposition to equitable tolling: 1) Caro's appointed direct appellate counsel in the Sandoval case still had six months from the date of appointment within which to bring a § 2255 challenge in the Benavidez case without violating the one-year statute of limitations, but failed to do so; and 2) Caro's brain impairment was insufficient to toll the statute of limitations because Caro did not require institutionalization and was not adjudged to be mentally incompetent. JA 173-74. JA 176.

The court heard argument on the motions to dismiss the non-capital and capital § 2255 motions on November 25, 2013. JA 181 *et seq.* On May 4, 2015, the court filed an Opinion in the Benavidez case in which it ruled in the first paragraph of its Opinion that "the Motion to Dismiss must be granted," JA 254, but

attached in support of the claim in the district court and will be included in the Joint Appendix to be filed in the capital § 2255 appeal.

10

in the Opinion's final paragraph stated, "I will summarily deny relief on [Caro's] §

2255 claim under Rule 4 of the Rules Governing § 2255 Proceedings and terminate

as moot the Motion to Dismiss this action as untimely filed." JA 266.

> The court summarized its ruling on the merits of the IAC claim as follows:

> Although the Motion to Dismiss does not argue that Caro's claim
> itself is deficient, even if he wins on the timeliness arguments, I have
> authority to summarily dismiss Caro's § 2255 motion as without
> merit. *See* § 2255(b); Rule 4 of the Rules Governing § 2255
> Proceedings. Because I find from the motion and the record that Caro
> has not satisfied either of the *Strickland/Hill* elements, I conclude he
> is not entitled to relief under § 2255.

JA 262.

The court found that Mr. Dene had not performed deficiently because he

faced a case in which the Government possessed a prison eyewitness, surveillance

video, and physical evidence to connect Caro to the offense. JA 264. The court

further stated that Caro failed to offer evidence of a viable guilt phase defense. *Id.*

The court concluded that Caro could not prove prejudice. JA 265. The court ruled

that trial counsel's opinion that Caro would not have pleaded guilty if he knew the

conviction would be admitted at capital sentencing was not sufficient to prove

prejudice under the test set forth in *Padilla v. Kentucky*, 559 U.S. 356 (2010).[2]

---

[2] The *Padilla* Court did not decide whether the defendant proved prejudice under
*Hill* because the issue had not been passed on by the Kentucky state courts. 559
U.S. at 374. The Supreme Court remanded for that determination.

11

Mr. Caro filed a Rule 59(e) motion that requested, *inter alia*, that a certificate of appealability ("COA") issue. JA 275-76. The Government opposed the motion. JA 278, 289-90. Mr. Caro filed a reply, and the court denied the motion and COA. JA 299-301. Mr. Caro filed a timely notice of appeal. JA 302.

## SUMMARY OF THE ARGUMENT

Caro's trial counsel negotiated a guilty plea for Caro in the non-capital Benavidez case but avers that he failed to apprise Caro that the resulting conviction and the lengthy term of imprisonment would likely be introduced at sentencing in the likely later capital sentencing hearing in the Sandoval case. The conspiracy to commit murder conviction in the Benavidez case was admitted at the Sandoval penalty hearing and argued by the Government to constitute proof of Caro's future dangerousness. The sentence of 27 years, which would be consecutive to his prior sentence of 30 years, was argued by the Government to mean that any penalty imposed by the jury short of death would constitute no penalty at all for someone already serving that much time and the death penalty was required. Trial counsel's advice for Caro to plead guilty constituted a violation of the Sixth Amendment right to the effective assistance of counsel where counsel failed to apprise Caro of that severe collateral consequence of his guilty plea in the Benavidez case.

/ / /

12

## ARGUMENT

**Carlos David Caro was denied his right to the effective assistance of counsel under the Sixth Amendment where his trial counsel counseled him to plead guilty to the offense of conspiracy to commit murder within a federal prison without apprising him that the Government would later admit that conviction and the resulting lengthy prison sentence in aggravation at a capital sentencing hearing.**

In its Opinion in which it denied relief, the district court stated that Caro's § 2255 Motion was "clearly untimely" under § 2255(f)(1) because it was filed more than one year after the judgment. JA 259. The court also noted that Caro invoked § 2255(f)(4) to claim that he had been diligent and, therefore, his § 2255 Motion was timely. *Id.* The court failed to address Caro's (f)(4) argument or the additional argument made in Defendant's Opposition to Motion to Dismiss, JA 94-98, that equitable tolling saved the § 2255 Motion from untimeliness.

Instead, the court ruled that § 2255(b) and Rule 4 of the Rules Governing § 2255 Proceedings permitted it to dispose of the matter on the merits of the underlying IAC claim rather than addressing the Government's threshold untimeliness argument. JA 262.[3] The court ruled that Caro could not demonstrate

---

[3] A sister circuit has held the practice to be appropriate in a § 2255 case where it allows a court, in the interest of judicial economy, avoid "addressing an enigmatic threshold issue by cutting directly to the merits," but "this approach requires, at a bare minimum, that the outcome on the merits is both clear and favorable to the party advocating the threshold issue." *Ramos-Martinez v. United States*, 638 F. 3d 315, 324-25 (1st Cir. 2011) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).

that his counsel's performance in advising Caro to accept the plea was deficient and that Caro could not demonstrate prejudice under *Strickland*, 466 U.S. 668, and the later decision in *Hill*, 474 U.S. 52, which applied *Strickland* in the guilty plea context. *See* JA 262. The court ruled, "Because I find from the motion and the record that Caro has not satisfied either of the *Strickland/Hill* elements, I conclude that he is not entitled to relief under § 2255." *Id.* The court "summarily" denied Caro's § 2255 Motion. JA 265.

This Court has held that it is not limited to grounds offered by the district court to support its decision and may affirm on any ground apparent from the record. *See United States v. Smith,* 395 F.3d 516, 519 (4th Cir. 2005). The Court has limited its ability to affirm on an alternate ground to circumstances where the prevailing party in the district court has advanced the argument for affirmance, whether or not the court actually considered the tendered argument. *See Skipper v. French*, 130 F.3d 603, 610 (4th Cir. 1997) (citing *Dandridge v. Williams*, 397 U.S. 471, 475-76 n. 6 (1970)). The Government raised the untimeliness argument, and only that argument, in the district court and, thus, it is appropriate for this Court to consider that argument here in the event the Court determines that Caro's IAC claim should not have been summarily dismissed. After setting forth the applicable standards of review that govern this appeal, Caro discusses the procedural issue before moving to the merits of the IAC claim.

14

### A.    Standard of review.

When reviewing an appeal from the denial of a § 2255 motion, this Court reviews *de novo* the district court's legal conclusions. *United States v. Poindexter*, 492 F.3d 263, 267 (4th Cir. 2007) (citing *United States v. Nicholson,* 475 F.3d 241, 248 (4th Cir. 2007)). When the district court denies § 2255 relief without an evidentiary hearing, the nature of the court's ruling is akin to a ruling on a motion for summary judgment. *Id.* In such a circumstance, the Court reviews the facts in the light most favorable to the § 2255 movant. *Id.* While the Court has ruled that the district court's decision to deny an evidentiary hearing is reviewed for abuse of discretion, *see United States v. Jones*, 600 Fed. Appx. 74, 75 (4th Cir. 2014), the Court has also left open whether the denial of an evidentiary hearing in a § 2255 proceeding is to be reviewed *de novo* or for abuse of discretion. *See United States v. Lemaster*, 403 F.3d 216, 221 n. 3 (4th Cir. 2005).

Federal Rule of Appellate Procedure 22(b)(2) requires that a notice of appeal be considered a request for COA if the district court denies the COA and no request is filed by the petitioner. Caro filed a timely notice of appeal. JA 302. By operation of Fourth Circuit Local Rule 22(a)(1)(B), the Court considers Caro's Informal Opening Brief in deciding whether to grant a COA. Rule 22(a)(1)(B) and its accompanying Note further permit Caro to file a separate Request for COA, which he does concurrently with the filing of this Informal Opening Brief.

15

For the Court's consideration, he also states here the standard for review required under *Slack v. McDaniel*, 529 U.S. 473 (2000), for the granting of a COA. Consistent with the text of § 2253(c), *Slack* requires that a habeas petitioner make "a substantial showing of the denial of a constitutional right." *Id.* at 483. To make that showing, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Id.* at 483-84 (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n. 4 (1983)). The same standard must be met with respect to both procedural and substantive issues decided by the district court. *Id.* at 484. Caro applies the *Slack* standard in the Request for COA he files concurrently with this Informal Opening Brief.

## B.    The Court should reject the untimeliness argument.

The district court's Opinion was ambiguous as to whether it ruled on the Government's untimeliness argument. The court ruled first that it was granting the Government's Motion to Dismiss, which alleged only that Caro's § 2255 Motion was untimely, JA 254, before later summarily denying merits relief and "terminat[ing] as moot the Motion to Dismiss this action as untimely filed." JA 266. Due to the court's failure to engage with Caro's arguments that his § 2255 Motion was timely under § 2255(f)(4) and that equitable tolling saved it from

16

untimeliness, and the parties' omission of any discussion of a COA on the procedural issue in the Rule 59(e) litigation or the court's Order and Opinion in response thereto, it appears the court actually only decided the merits of the IAC claim.

### 1.    Caro's motion was timely under § 2255(f)(4).

Under § 2255(f)(4), the one year statute of limitations runs from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."  In the § 2255 Motion, Caro argued that he met the requirement of § 2255(f)(4) because his counsel appointed in the Benavidez case filed the Motion less than one year after their appointment and their discovery that Caro's trial counsel in the plea proceeding failed to inform Caro that his plea and resulting sentence would be admitted by the Government at the capital sentencing hearing in the Sandoval murder case.  JA 49 - 50.

The Government has argued that the one-year statute of limitations ran from one year after the Government admitted the Benavidez assault conviction and sentence at Caro's later capital sentencing hearing.  JA 84.  According to the Government, Caro lacked diligence in filing the § 2255 Motion under § 2255(f)(4) because the date of admission of the Benavidez non-capital assault conviction in the Sandoval capital sentencing proceeding is when Caro "learned" or "knew" that his plea to the non-capital assault was relevant to his death penalty case, JA 84, and

17

he further "knew at that time that Dene had neglected to tell him when he pleaded guilty to conspiracy to murder, that the prosecution could use the conviction and sentence as an aggravating circumstance and a basis for arguing for the death penalty in his capital case." JA 85.

The Government presupposed in the Motion to Dismiss that Caro recognized at the time the conviction in the Benavidez case was admitted at the Sandoval capital sentencing hearing that Mr. Dene's failure to inform him bore significance and that Caro should have known to volunteer that information to his capital trial counsel and his direct appellate counsel. The Government repeatedly argued that Caro *personally* "knew" the legal salience of Mr. Dene's neglecting to inform him of the likely use of his conviction in the Benavidez case at the Sandoval capital sentencing hearing. Yet, Caro could not have intuited that Mr. Dene's failure to explain to him the Government's future use of the non-capital conviction at capital sentencing had any relevance to appointed counsel's representation of him in the capital trial or direct appeal. There are three primary bases for the lack of understanding, the first two of which demonstrate that Caro's cognitive limitations were beyond his control for purposes of assessing his diligence.

First, Caro has a ninth-grade education, not a law degree. JA 153. He had no reservoir of legal acumen that would have caused him to know he should volunteer Mr. Dene's failure to inform him of the severe collateral consequence of

18

his guilty plea in the Benavidez case to successive counsel later appointed in his capital case.

Second, to the extent the Government relies on what Caro "knew" personally at the time of capital sentencing, as a basis for finding that Caro lacked due diligence because he could have volunteered to his capital trial and direct appellate counsel that Mr. Dene failed to apprise him that the non-capital plea could be admitted at capital sentencing, Caro suffers from a brain impairment known as frontal lobe dysfunction and from Cognitive Disorder – NOS according to the defense neuropsychologist, Dr. Spica, who diagnosed Caro six months prior to capital sentencing in the Sandoval case. As a result of his dysfunction, Caro was not able to sort through information, and he had the reasoning ability of a 10-year-old and cognitive functioning in the fifth percentile of the population. JA 154, 157-58. Dr. Schwartz-Watts later corroborated Dr. Spica's diagnoses of frontal lobe dysfunction and Cognitive Disorder – NOS. JA 143-44 ¶¶ 33, 34. She further found that his "baseline cognitive impairments are further exacerbated by his anxiety disorder." JA 145. Dr. Schwartz-Watts found that Caro's exposure to the beatings inflicted on his mother by his father during his childhood led to the presence of several of the diagnostic criteria for Posttraumatic Stress Disorder ("PTSD"), an anxiety disorder. JA 143 ¶¶ 31-32; JA 145 ¶ 40. Caro did not have the cognitive wherewithal to understand that Dene's failure to inform him of the

19

plea's admissibility at capital sentencing had significance and that he should have related Mr. Dene's omission to subsequent capital counsel. He did not lack diligence in not volunteering Dene's omission to his capital case counsel.

Third, to the extent Caro might have understood Mr. Dene's omission to have any implications for the later capital sentencing, and there is no evidence before this Court that he did, it must be recalled that Dene negotiated a guilty plea that included explicit waivers of the right to appeal and to move for collateral relief under § 2255. JA 9 (Plea Agreement); JA 20 (Assistant U.S. Attorney's summary of the agreement). The district court reinforced the inviolability of those waivers when it admonished Caro prior to accepting his plea that, as a matter of law, he was waiving any right to attack the plea in a § 2255 motion. JA 21-22. Caro could only have understood that he had no right to ever challenge the plea. He could not have thought he had any responsibility to volunteer Dene's omission to later counsel.

As the Supreme Court has recognized, "'due diligence' is an inexact measure of how much delay is too much." *Johnson v. United States*, 544 U.S. 295, 309 n.7 (2005). Diligence, for purposes of equitable tolling, has been described as only "reasonable diligence" and not "maximum feasible diligence." *Holland v. Florida*, 560 U.S. 631, 653 (2010). What is apparent, however, is that "the diligence inquiry is fact-specific and depends on the circumstances faced by the

20

particular petitioner[.]" *Munchinski v. Wilson*, 694 F.3d 308, 331 (3d Cir. 2012). The Government acknowledged, in its Motion to Dismiss, the necessity of a unique fact-specific inquiry in each case. *See* JA 83 (citations omitted). Thus, the parties concede there is no bright-line rule to determine what constitutes diligence. *Munchinski*, 694 F.3d at 331.

For all of the above reasons, Caro did not lack diligence in failing to point out Mr. Dene's omission to counsel in his capital case, and present counsel exercised the due diligence required by § 2255(f)(4) in requesting their appointment in the present matter and timely filing the § 2255 challenge to the plea in the Benavidez case after having been appointed by the district court on the capital § 2255 in the Sandoval case.

### 2.    Equitable tolling saves the § 2255 Motion from untimeliness.

Even if the Court were to find that Caro somehow lacked diligence under § 2255(f)(4), he posits two bases for the Court to find that equitable tolling saves Caro's § 2255 Motion from untimeliness: 1) frontal lobe dysfunction and the resultant limitations on his cognitive functioning; and, 2) the ineffective assistance of capital trial counsel and direct appellate counsel.

The frontal lobe dysfunction and its accompanying diagnosis of Cognitive Disorder – NOS, with all of the negative implications for cognitive functioning described in the above section, served to equitably toll the one-year limitations

21

period outlined in § 2254(f)(1).  The one-year filing period set forth in § 2255 is subject to equitable tolling.  *See Holland*, 560 U.S. at 651-54 (holding that AEDPA's statute of limitations is not jurisdictional and that § 2244(d) is subject to equitable tolling in the appropriate case); *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (equitable tolling under *Holland* applies and may excuse untimeliness in a § 2255 case).  This Court's equitable powers allow it to relieve unjust hardships that can arise from a "hard and fast adherence to more absolute legal rules."  *Holland*, 560 U.S. at 650 (internal quotation marks and citations omitted).  As the Supreme Court reiterated in *Holland*, "the exercise of a court's equity powers must be made on a case-by-case basis." *Id.* (internal quotation marks and alterations omitted).  "The flexibility inherent in equitable procedure enables courts to meet new situations [that] demand equitable intervention, and to accord all the relief necessary to correct . . . particular injustices." *Id.* (internal quotation marks omitted; alterations in original).

To warrant equitable tolling, a petitioner must show "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 549-50.  A mental condition can constitute extraordinary circumstances that warrant equitable tolling.  *Sosa*, 364 F.3d at 513 (equitable tolling not available where claim of mental incapacity is undercut by petitioner filing *pro per* pleadings to vacate or modify sentence); *see*

22

*also Riva v. Ficco*, 615 F.3d 35, 39-40 (1st Cir. 2010) (mental illness can warrant equitable tolling in a habeas case); *Bolarinwa v. Williams*, 593 F.3d 226, 231-32 (2d Cir. 2010) (same).

Caro has presented specific facts supporting his allegation of long-standing brain impairment that prevented him from timely filing. Unlike the petitioner in *Sosa*, Caro's mental capacity prevented him from preparing or litigating a § 2255 motion on his own. That incapacity required that counsel intervene on his behalf, which counsel from the Arizona FPD and the FPD for the Western District of Virginia eventually did by requesting their appointment and filing Caro's non-capital § 2255 Motion within one year. As discussed above, Caro has the reasoning ability of a 10-year-old child and should not be held to the same standard as other prisoners without mental limitations. To the extent a question exists as to whether Caro's brain impairment caused him to fail to meet the AEDPA's filing deadline and entitle him to equitable tolling, the matter should be remanded for an evidentiary hearing. *See Riva*, 615 F.3d at 40; *Bolarinwa*, 593 F.3d at 32.

*Holland* also makes clear that "an attorney's failure to satisfy professional standards of care" may constitute the "extraordinary circumstance" that compels a finding that equitable tolling saves a habeas petition from dismissal on the basis of untimeliness. *Holland*, 560 U.S. at 649. *Padilla* states that professional standards of care may derive from ABA standards. 559 U.S. at 366-67. This Court has

23

recognized that the standard of care owed by counsel to a client in a criminal matter may also derive from expert counsel. *See Gray v. Branker*, 529 F.3d 220, 235 (4th Cir. 2008) (noting with respect to an IAC claim that the petitioner presented an "expert on the practice of criminal law").

Here, it was obvious to capital trial counsel no later than January 11, 2006, the date the Government noticed up its intention to seek the death penalty, that Caro's prior conviction would be used to support the death penalty. It also would have been obvious to any reasonably competent attorney that Caro's guilty plea had been and would continue to be extremely detrimental to him. With a capital case on the horizon, no competent attorney would ever have advised his client to enter a guilty plea for his only crime of violence, much less to a charge of conspiracy to murder with co-conspirators of a highly dangerous criminal gang. *See* Hammond Decl., JA 120-21 ¶¶ 43-45.

Capital counsel's failure to investigate and collaterally challenge this guilty plea and conviction in the Benavidez case is an extraordinary circumstance that prevented timely filing. Counsel had a duty to investigate aggravating evidence, including fully interviewing trial counsel, Mr. Dene. *See Rompilla v. Beard*, 545 U.S. 374, 383-86 (2005); ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, No. 10.7.B.1 (2003) ("ABA Guideline No. 10.7.B.1"). Capital counsel also had an obligation to move to set aside the

24

conviction pursuant to § 2255 as invalid due to Mr. Dene's ineffectiveness. *See* ABA Guideline No. 10.7.B.1 cmt (Counsel must "investigate prior convictions . . . that could be used as aggravating circumstances . . .  If a prior conviction is legally flawed, counsel should seek to have it set aside."); Hammond Decl., JA 120-21 ¶¶ 44-45.  Had capital counsel effectively investigated the circumstances surrounding Caro's prior conviction and obviously ill-advised plea agreement, they would have discovered the basis for this § 2255 Motion and could have timely filed it or sought their appointment in the district court to do so.

Caro's capital counsel had no strategic reason for their failure to challenge Caro's prior conviction. *See* Kalista Decl., JA 133 ¶ 22.  Their failure to do so rises above simple negligence, and constitutes extraordinary circumstances that prevented Caro, who reasonably relied on his attorneys, from filing on time.

Finally, the Government argued in the district court in its Reply to Defendant's Motion to Dismiss that the IAC of capital trial counsel no longer hindered Caro's ability to file the § 2255 Motion in the Benavidez case after August 7, 2007, when the Federal Public Defender ("FPD") moved for its substitution as counsel in the direct appeal in the Sandoval case. JA 174. The Government posits that those lawyers had six additional months within which to file the § 2255 Motion in the Benavidez case before the expiration of the one-year statute of limitations, but they failed to do so.  The Government implies, at a

25

minimum, that because the FPD is "the same agency that represents him in this action," and because the FPD counsel lacked diligence by failing to move for their appointment in the Benavidez case prior to expiration of the statute of limitations, there should be no equitable tolling for that period. JA 174 (argument); JA 179 (conclusion).

The Government's argument in the district court evinces two serious misunderstandings of the role of FPD offices and their relationship to each other, and the limitation imposed on direct appellate counsel in this Court's appointment order in the § 2255 appeal in the Sandoval case. First, contrary to the Government's assertion to the district court, this Court *did not* appoint the Federal Public Defender for the District of Maryland and the Federal Community Defenders for the Eastern District of Pennsylvania, on direct appeal, to represent Caro "in various legal proceedings *related to this case* and the death penalty case." JA 174 (citing *United States v. Caro*, Fourth Cir. No. 07-5, Doc. 31) (emphasis added). The Court's order only permitted the Federal Public Defender for the District of Maryland "to represent appellant in this appeal." *Caro*, Fourth Cir. No. 07-5, Doc. 31. The Court later appointed counsel from the Community Defenders for the Eastern District of Pennsylvania, but did not expand counsel's role to include the § 2255 proceedings in the Benavidez case. *See id.*, Doc. 83. Thus, this Court conferred no far-reaching authorization on counsel from the FPD offices in

26

Maryland and Pennsylvania to represent Caro wherever they might have seen fit.

Second, the FPD offices are not fungible, which allows the federal district courts and circuits to substitute one FPD office for another, for example, in conflict situations. It is what allowed the United States District Court for the Western District of Virginia to appoint the FDP for the District of Arizona and for the Western District of Virginia to represent Caro in the capital § 2255 case, *see United States v. Caro*, W.D.Va. No. 2:03-cr-10115, Doc. 190, even though those offices might be required to raise the ineffective assistance of direct appellate counsel from the FPD for the District of Maryland and the Eastern District of Pennsylvania. As the Court is aware, it may be ethically improper for counsel to litigate their own ineffectiveness and, thus, the appointment of independent counsel is at times required. *See Fowler v. Joyner*, 753 F.3d 446, 461-62 (4th Cir. 2014) (citations omitted).

Caro submits that his direct appellate counsel in the capital Sandoval case were not authorized to represent him in the non-capital Benavidez case and could not, of their own volition, have investigated and filed a § 2255 motion for Caro in that matter. To the extent the Court finds that it or the district court would have appointed direct appellate counsel to the Benavidez § 2255 matter had they requested their appointment, their dereliction constituted ineffective assistance for the same reasons outlined above with respect to the duties of capital trial counsel,

to wit, counsel in capital cases are required to be vigilant about prior convictions used by the Government to aggravate a sentence in a later case to the death penalty and must be prepared to challenge such conviction in separate collateral proceedings. *See* Hammond Decl., JA 117-18 ¶ 37, JA 120-21 ¶ 44; 2003 ABA Guideline No. 10.7.B.1 cmt (counsel must "investigate prior convictions . . . that could be used as aggravating circumstances . . . If a prior conviction is legally flawed, counsel should seek to have it set aside."). In the alternative, the Court should find that the IAC of direct appellate counsel in the Sandoval case gives rise to equitable tolling of the statute of limitations in the Benavidez case.

> **C.** **The district court erred in dismissing the IAC claim on its merits.**

> **1.** **The law of *Strickland, Hill*, and collateral consequences.**

In *Strickland*, the Court stated that "the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686. Under *Strickland*, counsel is ineffective if: (1) "representation fell below an objective standard of reasonableness"; and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 688, 694. The inquiry under the first prong, deficiency, is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. Performance is

28

deficient when the attorney fails to render the performance of a reasonably competent attorney. *Id.* at 687.

Prejudice is shown in the guilty plea context when there is a reasonable probability that, but for counsel's errors, a defendant would have gone to trial. *See Hill,* 474 U.S. at 58-59. This holding in *Hill* is regularly followed by the Supreme Court, this Court and other federal courts generally. *See, e.g., Missouri v. Frye*, ___ U.S. ___, 132 S. Ct. 1399, 1409-10 (2012) ("In cases where a defendant complains that ineffective assistance led him to accept a plea offer as opposed to proceeding to trial, the defendant will have to show 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'") (quoting *Hill,* 474 U.S. at 59); *United States v. Akinsade,* 686 F.3d 248, 253-54 (4th Cir. 2012) (applying the *Hill* standard to a defendant who received bad advice as to immigration consequences); *United States v. Mooney,* 497 F.3d 397, 404-05 (4th Cir. 2007) (applying *Hill* and finding prejudice where defendant pleaded guilty because counsel failed to advise him of a potentially successful affirmative defense); *United States v. Juarez,* 672 F.3d 381, 388-89 (5th Cir. 2012) (applying *Hill* and finding prejudice where bad immigration advice led to guilty plea); *Dando v. Yukins,* 461 F.3d 791, 800-02 (6th Cir. 2006) (applying *Hill* and finding prejudice where defendant did not receive advice as to an affirmative defense).

The Supreme Court recognized the obligation to warn of serious collateral consequences of a guilty plea beginning with its decision in *Hill,* 474 U.S. at 58-60. As early as 1999, well before Mr. Caro was charged with conspiracy to murder and before he executed the plea agreement or entered his plea, the American Bar Association stated that it was a standard of practice for guilty pleas that attorneys advise clients of the collateral consequences of guilty pleas. *See ABA Standards for Criminal Justice: Pleas of Guilty*, No. 14-3.2(f) (3rd ed. 1999).

This standard for professional practice was further recognized by the Supreme Court in *Padilla,* which imposed a duty on defense counsel under the Sixth Amendment to give a client accurate advice about the potential deportation consequences of a guilty plea. 536 U.S. at 367. The *Padilla* Court relied in part on the observation that the greater the stakes that an accused will suffer some adverse governmental action resulting from the plea, the greater is the importance of accurate legal advice. *Id.* at 364. The *Padilla* Court cited favorably the existence of ABA standards as guides to the prevailing norms of practice that should control on the question of whether counsel performed deficiently under *Strickland.* The Court can also consider the opinion of a standard of care expert when assessing the reasonableness of counsel's actions or inactions. *See, e.g.*, *Gray*, 529 F.3d at 235 (where this Court noted that petitioner presented an "expert on the practice of criminal law").

30

## 2.    Deficient performance and prejudice.

The Supreme Court has stated that "the penalty of death is qualitatively different from a sentence of imprisonment, however long.  Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two." *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976) (plurality).  As such, the interest in heightened reliability has seen the erection of particular safeguards to protect those charged with a capital crime. *See Beck v. Alabama*, 447 U.S. 625, 637-38 (1980).  Because death is the most serious of all collateral consequences, the failure of Mr. Dene to warn Caro of the consequence of his guilty plea in the Benavidez case on his potential death sentence constituted IAC within the meaning of *Strickland,* 466 U.S. 668.

Caro's expert *Strickland* counsel, Mr. Hammond, is of the opinion that Mr. Dene's failure to advise Caro to reject this plea agreement due to the severe consequences of the plea at the capital sentencing hearing in the Sandoval case constituted performance far below acceptable professional standards for an attorney. *See* Hammond Decl., JA 120 ¶¶ 43-45.  As Mr. Hammond concluded:

> While the United State Supreme Court has focused greater attention on the critical importance of counsel in connection with guilty pleas, competent counsel have long known and emphasized the duty fully to advise a client of all of the direct and collateral consequences of a plea.  Mr. Caro was not advised by counsel in the Benavidez matter that pleading to conspiracy to commit first degree murder would have

31

been used to support an aggravating factor in the Sandoval penalty phase.

*Id.* at 121 ¶ 45.

The prejudice to Caro is clear. As Mr. Dene stated:

I did not advise [Caro] of the implications that the plea agreement would have on the prison killing case. I did not advise Mr. Caro that the Conspiracy to Commit Murder conviction would likely be used against him in a later capital case and that he should not sign the plea agreement.

I was aware of Mr. Caro's limited education. I know that Mr. Caro had not completed high school and that he had no ability to understand legal proceedings without the benefit of counsel.

I regularly advised Mr. Caro and he followed my advice. Mr. Caro trusted me. Mr. Caro was not afraid of going to trial and if I recommended going to trial he would have done so.

JA 103-04 ¶¶ 6-8.

Mr. Dene's declaration is a sufficient basis to establish prejudice under the *Hill* standard or, at a minimum, remand for an evidentiary hearing on the question of prejudice. The district court noted that Mr. Dene averred that Caro would not have pleaded guilty had he been so counseled by Mr. Dene, but that Caro did not "submit his own affidavit, stating that he would have rejected the Plea Agreement if fully advised about the potential impact of his conspiracy conviction and sentence on the capital case." JA 266. Because the district court failed to hold an evidentiary hearing, this Court must accept as true Mr. Dene's averment, based on his intimate relationship with Caro, that Caro would not have pleaded guilty if Mr.

Dene had advised him of the later capital sentencing consequence of the plea to conspiracy to murder. *See Poindexter*, 492 F.3d at 267. That Caro would have insisted on going to trial necessarily means he meets the test for *Strickland* prejudice set forth in *Hill*, 474 U.S. at 58-59.

Finally, the district court's analysis that Caro could not succeed at a non-capital trial of a conspiracy charge, JA 263-65, misstates the test of *Hill* for determining *Strickland* prejudice in a guilty plea context and ignores what Caro could have achieved by going to trial. A trial strategy, even if he were convicted, would have deprived the government of the admission of the Judgment of November 1, 2004, in the Benavidez case at the later capital sentencing hearing in the Sandoval case. The Judgment in the Benavidez case *was* admitted at capital sentencing in the Sandoval case on February 5, 2007, as Government Exhibit CVN.F.01. *See* Sentencing Hearing Transcript, *United States v. Caro*, W.D.Va. 1:06CR-00001, Feb. 5, 2007, at 105-06; Judgment, *United States v. Caro*, W.D.Va. No. 2:03CR32(a), Nov. 1, 2004, Doc. 168. The Judgment indicates that Caro's conviction was obtained by virtue of a guilty plea. The Judgment signaled to the capital sentencing jury in the Sandoval case that Caro *admitted* to having conspired to murder another inmate and, from the Government's admission of evidence and closing argument at the capital sentencing hearing, he had done so with members of a violent criminal gang. *See* Sentencing Hearing Transcript, *United States v.*

33

*Caro*, W.D.Va. 1:06CR-00001, Feb. 13, 2007, at 105-06. The Government argued:

> [O]n August 29, 2003, while [Caro's] in this more secure, greater control facility, United States penitentiary, he shanks, he and his buddies, they get together and they coordinate and plan and carry out an attack on a rival gang leader, Ricardo Benavidez. They stabbed him 29 times in front of everybody, in front of the cameras. They carried it out.

Sentencing Hearing Transcript, *United States v. Caro*, W.D.Va. No. 1: 06CR-00001, Feb. 13, 2005, at 23.

Benavidez was actually a member of the same gang and, as Caro pleaded in his Rule 59(e) motion, grand jury evidence showed that any plan to assault Benavidez originated with another inmate who sought to replace Benavidez as leader of that gang. JA 274. Such evidence would have weakened the Government's theory that Caro stood to benefit from a conspiracy. Caro's other six co-defendants pleaded to the lesser weapon count in the Superseding Indictment, which prompted the court to inquire at the sentencing of a co-defendant why the Government gave him light treatment. The Government stated *inter alia* that it possessed prison video of the incident that was not of "high quality," suggesting it had proof problems with respect to the other charges. Reasonably competent counsel would have required the Government to prove beyond a reasonable doubt that Caro conspired with others to murder a member of the same criminal gang where the failure to do so would result in the admission of

34

a later capital sentencing hearing of evidence of Caro's future dangerousness that he admitted in a guilty plea.

Caro's going to trial might also have leant an argument to Caro that a Benavidez trial conviction was under appeal if the government chose to prosecute the death case during the appeal's pendency or it might have dissuaded DOJ from making its death authorization in light of the pending appeal.

## CONCLUSION

For the foregoing reasons, the Court should grant a COA as to both the procedural issue not decided by the district court and the district court's ruling on the merits of Caro's IAC claim. The Court should order the Government to file a responsive brief as to both issues. Caro respectfully requests that the Court reverse the judgment of the district court in which it summarily denied § 2255 relief on the merits and order that the § 2255 Motion be granted. In the alternative, to the extent there is a substantial question as to whether Caro would have gone to trial in the Benavidez case had Mr. Dene so instructed him, or as to whether Caro's brain impairment caused him to miss the filing deadline of § 2255(f)(4), Caro requests that the Court remand for an evidentiary hearing.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Fourth Circuit Rule 34(a), Caro respectfully requests oral argument in this matter, to be combined with oral argument in his capital appeal,

35

*United States v. Caro*, Fourth Cir. No. 16-1.  The non-capital conviction at issue in the present appeal was admitted at a later capital sentencing to help secure a sentence of death.  The § 2255 motion in the capital case challenged *inter alia* the constitutionality of the non-capital conviction, and the denial of relief on that claim will be before the Court when Caro files the Opening Brief in Fourth Cir. No. 16-1.  Discussion of the implications of the *vacatur* of the non-capital conviction, were the Court to so order, would be beneficial to the Court's consideration of the capital appeal.

Respectfully submitted this 17th day of November, 2016.

s/Timothy M. Gabrielsen
Timothy M. Gabrielsen
Fay F. Spence
Brian J. Beck
Assistant Federal Public Defenders

Attorneys for Defendant-Appellant

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 9,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

s/Timothy M. Gabrielsen
Attorney for Defendant/Appellant
Dated:  November 17, 2016

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2016, I electronically filed the

attached document with the clerk of Court using the CM/ECF System which will

send notice of such filing to the following registered CM/ECF users:

Jean B. Hudson
Assistant United States Attorney
United States Attorney's Office
255 West Main Street, Room 130
Charlottesville, VA 22902


s/Teresa Ardrey
Legal Assistant