No. 16-6027

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA, Plaintiff-Appellee,

vs.

CARLOS DAVID CARO, Defendant-Appellant.

Appeal from the United States District Court for the Western District of Virginia
Hon. James P. Jones, District Judge, Presiding
Dist. Ct. No. 2:03CR10115

## REQUEST FOR CERTIFICATE OF APPEALABILITY

JON M. SANDS
Federal Public Defender
District of Arizona
TIMOTHY M. GABRIELSEN
Nevada Bar No. 8076
Assistant Federal Public Defender
407 West Congress Street, Suite 501
Tucson, Arizona 85701
tim_gabrielsen@fd.org
Tel. (520) 879-7614
Facsimile (520) 622-6844

FAY F. SPENCE
Virginia Bar No. 27906
First Assistant Federal Public Defender
210 First Street, SW, Suite 400
Roanoke, Virginia 24011
fay_spence@fd.org
Tel. (540) 777-0880
Facsimile (540) 777-0890

BRIAN J. BECK
Virginia Bar No. 78049
Assistant Federal Public Defender
201 Abingdon Place
Abingdon, Virginia 24211
brian_beck@fd.org
Tel. (276) 619-6080
Facsimile (276) 619-6090

*Counsel for Defendant-Appellant Carlos David Caro*

Petitioner Appellant Carlos David Caro ("Caro"), through counsel, moves, pursuant to Fourth Circuit Local Rule 22(a)(1)(B), for a Certificate of Appealability ("COA") in the above-captioned cause. Caro relies for support on the attached Memorandum in Support, the Informal Opening Brief and Joint Appendix filed concurrently with this Request, and on all pleadings contained in the district court record. He requests that the Court consider this Request *in pari materia* with the Informal Opening Brief.

## MEMORANDUM IN SUPPORT

In *Padilla v. Kentucky*, 559 U.S. 356 (2010), the Supreme Court ruled that "[t]he severity of deportation – 'the equivalent of banishment or exile' - only underscores how critical it is for counsel to inform her noncitizen client that he faces risk of deportation." 559 U.S. 356, 373-74 (2010) (citation omitted). The *Padilla* Court held that the failure to do so constitutes deficient performance under the first prong of the test for ineffective assistance of counsel ("IAC") in *Strickland v. Washington*, 466 U.S. 668 (1984), and the Court remanded to the Kentucky state courts for application of *Strickland's* prejudice prong. *Padilla*, 559 U.S. at 369.

While the risk of banishment or exile is sufficiently critical to require counsel to broach with a client the collateral consequences of a guilty plea to a drug charge in state court, it must be even more critical for counsel to explain to a client that his plea to an extremely violent prison crime will inexorably be

1

introduced against that client in aggravation in a pending unrelated federal capital prosecution. Apart from the facts of a prison murder that lead directly to that penalty hearing, little could be more prejudicial to a capital accused than to have the Government admit evidence of future dangerousness consisting of prior acts of violence. *See Simmons v. South Carolina*, 512 U.S. 154, 162-65 (1994); *Skipper v. South Carolina*, 476 U.S. 1, 5 (1986); *Ladd v. Cockrell*, 311 F.3d 349, 360-61 (5th Cir. 2002). Reasonably competent counsel, under those circumstances, would nearly always opt to counsel his client to take the matter to trial to attempt to defeat what otherwise might be probative evidence of future dangerousness. That the accused has admitted such acts by pleading guilty to conspiracy to commit murder based on his role in a violent prison assault would be particularly aggravating. That is especially true in a case like Caro's where his prior criminal record otherwise consisted solely of three "relatively minor, non-violent drug offenses." *See United States v. Caro*, 597 F.3d 608, 636 (4th Cir. 2010) (Gregory, J., dissenting).

Yet, the district court denied the IAC claim in Caro's § 2255 Motion on the basis that trial counsel had no such obligation to advise under the Sixth Amendment. JA 262-65. The court further ruled that, even if counsel performed deficiently in failing to advise Caro of the admissibility of that plea and lengthy prison sentence at capital sentencing, Caro could not prove prejudice under

2

*Strickland* and *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985), the case that first applied the test for IAC under *Strickland* in the guilty plea context. JA 265-66. The Court issued two further orders in which it ruled that Caro had not even made "a substantial showing of the denial of a constitutional right" so as to require that a COA issue so Caro could appeal. *See* Final Order, *United States v. Caro*, W.D.Va. No. 2:03CR10115, Doc. 203 (May 4, 2015) ("Based upon the court's finding that the defendant has not made the requisite showing of denial of a substantial right, a certificate of appealability is DENIED."); Order denying a Rule 59(e). JA 299. Those rulings left Caro without recourse to appeal unless this Court grants the Request for COA.

For the reasons set forth below, Caro demonstrates that he meets the requirement under 28 U.S.C. § 2253(c)(2) for the Court to grant a COA and allow this appeal to move forward. For the court's convenience, Caro first sets forth a summary of the argument similar to the one he presents in the Informal Opening Brief and the procedural posture of the appeal necessary to the Court's resolution of the present Request for COA. That provides context for the discussion of the standard of review applicable to a request for COA and Caro's argument why this Court should grant the COA and order Respondents to prepare a responsive brief, which follow.

/ / /

3

## I.    Summary of the ineffective assistance of counsel argument.

Caro's trial counsel, Louis Dene, negotiated a guilty plea for Caro in the non-capital assault of inmate Ricardo Benavidez (the "Benavidez case") at USP-Lee in August 2003. JA 6 *et seq.* The plea agreement, which was accepted by the trial court, allowed Caro to plead guilty to one count of conspiracy to commit murder in exchange for the dismissal of two counts, but with exposure to the highest possible Guidelines sentence. JA 6-7. The court sentenced Caro to 327 months in prison, consecutive to a prior federal sentence of 30 years. Mr. Dene avers that he failed to apprise Caro that the resulting conviction and the lengthy term of imprisonment would likely be introduced at sentencing in the later capital sentencing hearing in the capital murder case in which Caro was alleged to have killed his cellmate Roberto Sandoval (the "Sandoval case"). JA 57-58.

The conspiracy to commit murder conviction in the Benavidez case was admitted at the Sandoval penalty hearing and argued by the Government to constitute proof of Caro's future dangerousness. JA 48-49. The sentence of 27 years was argued by the Government to mean that any penalty imposed by the jury short of death would constitute no penalty at all for someone already serving that much time and that the death penalty was required. *Id.*

Caro alleged in a Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255 that trial counsel's advice for Caro to plead guilty constituted

a violation of the Sixth Amendment right to the effective assistance of counsel where counsel failed to apprise Caro of that severe collateral consequence of his guilty plea in the Benavidez case, to wit, that it would be admitted at the capital sentencing hearing in the Sandoval case.  JA 50.

The Government argued in a Motion to Dismiss only that the § 2255 Motion was untimely. JA 80.  After allowing the parties to complete the briefing, the court denied relief on the merits of the IAC claim and "terminated as moot" the Government's Motion to Dismiss, which alleged that the § 2255 Motion was untimely.  JA 266.  As noted above, the court failed to grant a COA.

## II.     The requirement for the grant of a COA.

The COA is necessary under 28 U.S.C. § 2253(c) to confer jurisdiction on the Court to allow a petitioner to appeal the denial of § 2255 relief in the district court.  *See Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2005) (the COA requirement is jurisdictional).  While the filing of a notice of appeal constitutes a request for COA in a case in which the district court fails to grant a COA, *see* Fed. R. Civ. P. 22(b)(2), this Court orders the filing of a merits brief to assist it in determining whether to grant a COA.  *See* Fourth Circuit Local Rule 22(1)(B).  Pursuant to the briefing schedule ordered by the Court in this matter, Fourth Cir. Doc. 8, Caro files an Informal Opening Brief on this date.  The Court's rules also allow a habeas petitioner to file a separate request for COA, which Caro does here,

5

to ensure that "the petitioner will not be prevented from making arguments relating to the certificate that are separate from the arguments on the merits." *See* Note, Local Rule 22(b)(1).

To be entitled to a COA, a petitioner must demonstrate a "substantial showing of the denial of a constitutional right." *See* § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). That demonstration "includes a showing that reasonable jurists could debate whether (or, for that, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Id.* at 484 (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n. 4 (1983)). While the COA showing requires "an overview of the claims in the habeas petition and a general assessment of their merits," it "does not require a showing that the appeal will succeed." *Miller-El*, 537 U.S. at 337.

The district court sent ambivalent signals as to whether it was denying relief on the merits or on the basis of the Government's untimeliness argument. At the outset of the Opinion, the Court stated that "the Motion to Dismiss must be granted." JA 254. The Government's Motion to Dismiss alleged only that Caro's § 2255 Motion was untimely, and did not address the merits of Caro's IAC claim. JA 80-85. In denying relief at the close of its Opinion, the court stated it "will summarily deny relief on [Caro's] § 2255 claim under Rule 4 of the Rules

6

Governing § 2255 Proceedings and terminate as moot the Motion to Dismiss this action as untimely filed." JA 266.

From the record, however, it appears the court denied relief on the merits because it failed to consider in its Opinion Caro's arguments that his § 2255 Motion was timely under an alternate provision of the statute of limitations, § 2255(f)(4), because it was filed within one year of "the date on which the facts supporting the claim or claims presented could have been discovered with the exercise of due diligence," JA 49 (§ 2255 Motion), 90 (Opposition to Motion to Dismiss), and his argument that equitable tolling saved the Motion from untimeliness. JA 94 (Opposition to Motion to Dismiss).

Undersigned counsel has not found precedent of this Court that controls whether the Court may consider a procedural issue in a habeas corpus appeal where a COA has not been granted on that issue. However, other circuits have assumed that a COA on the merits will encompass all procedural issues that must be addressed on appeal. *See McCoy v. United States*, 266 F.3d 1245, 1248 n. 2 (11th Cir. 2001); *United States v. Howard*, 381 F.3d 873, 877 n. 3 (9th Cir. 2004).

Caro submits that if the Court grants the COA as to the merits of his IAC claim, the Court must also determine whether the Government's defense of untimeliness was well-taken. That would be consistent with Caro's concession in the Informal Opening Brief that the Court's precedents allow it to affirm or reverse

the judgment of the district court on alternate grounds so long as the ground was advanced in the district court. *See* Informal Opening Brief at 14 (citing *United States v. Smith,* 395 F.3d 516, 519 (4th Cir. 2005); *Skipper v. French*, 130 F.3d 603, 610 (4th Cir. 1997)). Caro presents argument that his § 2255 Motion was not untimely or that equitable tolling saves it from untimeliness in his Informal Opening Brief (at 16-28). He rests on those arguments here.

**III.    A COA should issue as to the merits of the ineffective assistance claim.**

The district court accurately set forth the familiar two-part test for ineffective assistance of counsel set forth in *Strickland*, JA 261, but ultimately denied relief on the basis that it would not have been "rational," as the term is understood in *Padilla*, 559 U.S. at 372, for Caro to have rejected the guilty plea and gone to trial. JA 266. Reasonable jurists could debate whether the court correctly applied in this guilty plea case either the deficient performance prong of *Strickland*, as that prong is understood in *Padilla*, 559 U.S. at 366-69, or the prejudice prong of *Strickland*, as that prong are elucidated in *Hill*, 474 U.S. at 58-59, to deny Caro relief.

**A.    Reasonable jurists could debate the district court's ruling that trial counsel did not render deficient performance.**

The court summarized Caro's argument to be that "the death sentence was such a severe consequence of Caro's plea to the conspiracy charge, Dene had a per se obligation to advise Caro of its consequence." JA 262. On the other hand, the

court found controlling for *Strickland* purposes "*all* the circumstances counsel faced" in determining whether counsel's performance was deficient.  JA 263 (italics in original).  The court purported to rely on *Padilla* for the proposition that the *Padilla* Court "relied on more than counsel's failure to inform Padilla of all collateral consequences of the consequences as professional norms recommended." JA 263.    The court  concluded  that  *Padilla*  "reemphasized  that  counsel's constitutional  obligation  in  the  plea  context  was  to  inform  Padilla  of  'the advantages of a plea agreement,' compared to the alternative of going to trial." *Id.*

Reasonable  jurists  could  debate  whether  Mr.  Dene's  explication  of  the relative  advantages  of  a  plea  or  trial  could  reasonably  omit  *any  discussion whatsoever* of the capital sentencing consequences of Caro's plea to conspiracy to murder in the Benavidez case.  As the Court noted in *Padilla*, "silence on matters of great importance" pertaining to a guilty plea should not be incentivized.  559 U.S. at 370.    Such silence on counsel's part, especially where the relevant information is "available," is "fundamentally at odds with the critical obligation of counsel to advise the client of 'the advantages and disadvantages of the plea.'" *Id.*

The court later set forth the trial evidence the Government represented to the court at the plea hearing it would produce if the case went to trial.  JA 264. Without the defense offering "a viable defense," the court ruled that Mr. Dene "reasonably  could  have  believed  that  Caro's  conviction  was  a  foregone

9

conclusion." That might have been true in *Padilla* as well, but the Court indicated that "it is quintessentially the duty of counsel to provide her client with available advice about an issue like deportation and the failure to do so 'clearly satisfies the first prong of the *Strickland* analysis.'" 559 U.S. at 371 (citing *Hill*, 474 U.S. at 62 (White, J., concurring)).

Not once in its Opinion did the district court discuss the almost certain death penalty consequences Caro later faced in the Sandoval case if he pleaded guilty and the conviction was admitted as proof of future dangerousness. *See Simmons*, 512 U.S. at 162-65; *Skipper*, 476 U.S. at 5; *Ladd*, 311 F.3d at 360-61. In *Padilla*, the Court stated its view that "as a matter of federal law, deportation is an integral part – indeed, sometimes, the most important part – of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." 559 U.S. at 364. As expert *Strickland* counsel Larry Hammond made clear in his declaration, JA, 120-21 ¶¶ 44, 45, the prospect that Caro would later have a death sentence imposed, in large measure due to the admission of the conspiracy to murder conviction in the Benavidez case, was the most important consequence that could befall him upon his pleading guilty in the present matter. *Padilla* requires consideration of prevailing professional norms, which, this Court has said, may come from the opinions of expert criminal defense counsel. *See Gray v. Branker*, 529 F.3d 220, 235 (4th Cir. 2008) (noting with respect to an IAC claim that the

10

petitioner presented an "expert on the practice of criminal law").

Against this backdrop, a decision to stand trial in the Benavidez case would have been entirely "rational under the circumstances," as that requirement has been described in *Padilla*, 559 U.S. at 372.

### B. Reasonable jurists could debate the district court's ruling that Caro was not prejudiced by his counsel's deficient performance.

The district court acknowledged that Mr. Dene's declaration averred that Caro would not have pleaded guilty if Mr. Dene had advised him not to do so.  JA 266.  Instead of applying the prejudice prong of *Hill*, which requires a showing that there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," 474 U.S. at 59,  the court denied relief on the basis that it would not have been "rational" within the meaning of *Padilla* for Caro to have done so.  Reasonable jurists could debate whether the district court focused too narrowly on what it perceived to be the benefit to Caro in the Benavidez case, rather than considering, in addition, the consequences to his later capital trial that are discussed above and in the Informal Opening Brief (at 33-35).

As Mr. Dene averred, Caro did not stand to benefit personally from the plea in the Benavidez case. JA 103 ¶ 5.  Still, as the court admonished him at the plea hearing, he was waiving the full panoply of constitutional rights that attach at trial, including the rights to the presumption of innocence, to be proved guilty beyond a

reasonable doubt, to the assistance of counsel, to call witnesses, to cross-examine the Government's witnesses, and to testify in his own behalf. JA 25. The district court's statement of the benefit to Caro as a reduction in sentence from 360 months down to 327 months, JA 265, when set against Caro's preexisting federal prison sentences that already exceeded 30 years at that point, is specious. Whether Caro would spend 30 years or 27 years, in addition to his pending sentence of more than 30 years of prison time in effect at the time of the plea, was inconsequential compare to the prospect that the conviction would be used to prove his future dangerousness and secure a death sentence in the Sandoval case.

As noted in the Informal Opening Brief (at 33), the Judgment in the Benavidez case *was* admitted at capital sentencing in the Sandoval case. *See* Sentencing Hearing Transcript, *United States v. Caro*, W.D.Va. 1:06CR-00001, Feb. 5, 2007, at 105-06; Judgment, *United States v. Caro*, W.D.Va. No. 2:03CR32(a), Nov. 1, 2004, Doc. 168. The Judgment indicates that Caro's conviction was obtained by virtue of a guilty plea, which signaled to the capital sentencing jury in the Sandoval case that Caro *admitted* to having conspired to murder another inmate and, from the Government's admission of evidence and closing argument at the capital sentencing hearing, he had done so with members of a violent criminal gang. *See* Sentencing Hearing Transcript, *United States v. Caro*, W.D.Va. 1:06CR-00001, Feb. 13, 2007, at 23.

12

Although a conviction for conspiracy to murder after a trial would have been admitted at capital sentencing, the Government would not have been able to argue to the sentencing jury that Caro *admitted* to the acts of violence or that he associated with other members of a violent criminal organization.  In addition, Caro's guilt at trial was not a foregone conclusion.  As Caro notes in the Informal Opening Brief (at 34-35), the Government admitted at the plea hearing of one of Caro's co-defendants, that it had proof problems, including a prison video of the incident that was of poor quality, which required it to seek a lower level of liability for that defendant.  Evidence further showed that another Texas Syndicate member, not Caro, stood to gain if Benavidez were removed from his gang leadership role.  Caro's going to trial might also have allowed him to argue that a Benavidez trial conviction was under appeal if the government chose to prosecute the Sandoval case during the appeal's pendency or it might have dissuaded DOJ from making its death authorization in light of the pending appeal.

## CONCLUSION

It is reasonably probable that Caro would not have pleaded guilty in the Benavidez case if Mr. Dene had told him it would later be admitted by the Government to attempt to end his life.  It is unconscionable that Mr. Dene did not say a word about that prospect when he advised Caro to plead guilty.  It simply never came up.  The district court erred in denying relief on the IAC claim.  The

13

IAC claim was sufficiently substantial that reasonable jurists could debate whether the district court was correct in its merits ruling. At a minimum, the question whether counsel must explain to his client how a guilty plea to a violent prison crime will affect him in a capital sentencing hearing in a pending capital murder case is an issue that "deserve[s] encouragement to proceed further." *Slack*, 529 U.S. at 484 (citing *Barefoot*, 463 U.S. at 893 & n. 4).

WHEREFORE, Appellant respectfully requests that the Court issue a Certificate of Appealability and order the Government to respond to Caro's Informal Opening Brief.

Respectfully submitted this 17th day of November, 2016.

s/Timothy M. Gabrielsen
Timothy M. Gabrielsen
Fay F. Spence
Brian J. Beck
Assistant Federal Public Defenders

Attorneys for Defendant-Appellant

14

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2016, I electronically filed the attached document with the clerk of Court using the CM/ECF System which will send notice of such filing to the following registered CM/ECF users:

Jean B. Hudson
Assistant United States Attorney
United States Attorney's Office
255 West Main Street, Room 130
Charlottesville, VA 22902


s/Teresa Ardrey
Legal Assistant